UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>HOSPITAL HOUSEKEEPING SYSTEMS OF HOUSTON, INC., *et al.,*<br><br>Defendants. | Case No.  1: 11-cv-1658-LJO-SAB<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

Before the Court is Defendants Hospital Housekeeping Systems, Inc.'s and Hospital Housekeeping Systems, LLC's (collectively "Defendants" or "HHS") Motion to Enforce Settlement Agreement. (Doc. 37.) The motion was heard before Magistrate Judge Barbara A. McAuliffe, who had presided over the formal settlement conference. Counsel Rumie Vuong telephonically appeared on behalf of Plaintiff United States Equal Employment Opportunity Commission ("EEOC"). Counsel Julie Capell telephonically appeared on behalf of Defendants. Counsel for the parties filed briefing, declarations, and exhibits in support of their positions and the Court heard oral argument on the motion on September 20, 2013. On September 30, 2013, funding for the federal government lapsed and Plaintiff EEOC moved the Court to stay these proceedings as counsel for the government was prohibited from working on this matter during the federal government shut down. On October 22, 2013, the Court lifted the stay entered on October

1, 2013. (Doc. 46). For the reasons that follow, Defendants' Motion is **GRANTED**.

**BACKGROUND**

The case at bar involves a claim under the American with Disabilities Act ("ADA") by real party in interest Angelica Jaime-Cece ("Ms. Cece"). In September 2011, the EEOC brought this action on behalf of Ms. Cece alleging that Defendants' failure to make a reasonable accommodation for Ms. Cece's learning disability violated the ADA. Before her termination, Ms. Cece was employed by Defendants as a housekeeper at Children's Hospital in Madera, California. The EEOC's action alleges that HHS discharged Ms. Cece after learning she could not read, a byproduct of her learning disability, while continuing to employ other non-disabled individuals who were similarly situated. HHS allegedly further violated the ADA in refusing to engage in the interactive process and provide Ms. Cece with a reasonable accommodation in violation of the ADA. 42 U.S.C. §§ 12112(a) and (b).

**A.    Prior Settlement Discussions**

Soon after the case was filed, the Court set a scheduling order. (Doc. 16). The dispositive motion deadline was set for February 11, 2013. After a stipulated continuance, the Court reset the dispositive motion deadline for March 11, 2013. (Doc. 24). In their stipulation, the parties informed the Court that active settlement negotiations were taking place and that there was a good chance the case would settle. The parties stipulated that if they were unable to settle the case, Defendants would file their motion for summary judgment in accordance with the new deadline set by the Court.

Settlement negotiations broke down and Defendants filed their motion for summary judgment on March 11, 2013. Informal settlement discussions began again on February 4, 2013, and the parties discussed exchanging an initial offer and consent decree. (Doc. 39 at 3). Discussions closed, the EEOC sent Defendants a draft of its consent decree, and requested that any modifications to the consent decree be redlined and returned to the EEOC for review. Defendants responded that they were in the process of editing the consent decree, but did not provide the EEOC with any drafts prior to the Court's formal settlement conference.

### B. March 28, 2013 Formal Settlement Conference

The informal settlement discussions between the parties culminated in a formal settlement conference held on March 28, 2013 before the honorable Judge Barbara A. McAuliffe, where a settlement was reached. At the conference, Defendants agreed in principle that they would pay $40,000 to settle the case and sign a consent decree that was yet to be finalized. The terms of the settlement were read into the record after Judge McAuliffe confirmed with all present parties that they had full authority to bind their respective clients to settlement.

### C. Post Settlement Discussions

After the settlement conference, the parties continued to propose and discuss the terms of the consent decree. On April 10, 2013, the EEOC sent Defendants a second proposed consent decree reflecting the agreements it believed were made prior to and at the settlement conference. Later that day, Defendants provided the EEOC with their redlined version of the draft decree. The two decrees differed significantly on several provisions, including but not limited to: (1) successor liability, (2) the designation and duties of the ADA coordinator, (3) the inclusion of two non-admission clauses, and (4) the revision of Defendants' policies and procedures concerning the ADA. The parties unsuccessfully attempted to resolve the discrepancies in their consent decrees in status conferences with the Court. Unable to do so, this motion was filed.

### D. The Parties' Positions

In their motion to enforce, Defendants argue that the EEOC's proposed consent decree impermissibly seeks to add different and additional terms to the settlement agreement set forth on the record. Defendants ask the Court to grant their motion to enforce settlement and order that the EEOC execute a consent decree consistent with the terms mutually agreed upon by the parties on the record at the settlement conference.

In response, the EEOC primarily argues that the settlement agreement set forth on the record is unenforceable. The EEOC contends that in discussions prior to the formal settlement conference, Defendants agreed to certain terms of the consent decree. The EEOC argues it went to the formal settlement conference under the impression that the terms of the proposed consent decree not objected to by Defendants were agreed to and no longer at issue. However, EEOC

argues the differing consent decrees presented after the settlement conference reveal that a meeting of the minds did not occur on material terms including: (1) successor liability; (2) the duties and designation of the ADA coordinator; (3) revision of Defendants' policies and procedures; and (4) the non-admission clauses. According to the EEOC, the fundamental differences between the parties' proposed consent decrees signifies that no agreement existed between the parties as there was no meeting of the minds on material terms of the settlement agreement.

## LEGAL STANDARD

"[I]t is [] well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978) (citations omitted). "[A] motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (internal citations omitted).

"Under California law, the intent of the parties determines the meaning of the contract." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (citing Cal. Civ. Code §§ 1636, 1638). The proper inquiry is the parties' objective intent, "that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties." *Id.* Therefore, if a party does not express his or her true intent as to the meaning of a material term of a settlement agreement, that subjective intent is irrelevant. *Id.* Moreover, when parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement. *Blix Street Records, Inc. v. Cassidy*, 191 Cal.App.4th 39, 48 (2010).

California has a strong policy in favor of enforcing settlement agreements. *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007). A settlement agreement "must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." *Roden v. Bergen Brunswig Corp.*, 107 Cal.App.4th 620, 625 (2003); *see* Cal. Civ. Code § 1636. "[C]ourts

will not set aside contracts for mere subjective misinterpretation." *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal.App.4th 1410, 1421 (1996)." A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." *Lindsay v. Lewandowski*, 139 Cal.App.4th 1618, 1622 (2006).

**ANALYSIS**

**1.     The Settlement Agreement on the Record**

At the conclusion of the settlement conference held on March 28, 2013, the parties reached an agreement on the terms of settlement. They then gathered in the courtroom and, with their consent, the Court stated, on the record, that the parties have reached an agreement on terms to settle the case with the understanding that there were remaining issues that needed "to be ironed out" before the final agreement is signed. (Transcript of March 28, 2013 Settlement Conference ("MSC Transcript"), at 7, Doc. 32.) The Court outlined the two components of the settlement agreement including: (1) the amount of the monetary settlement totaling $40,000 to be paid to the real party in interest and (2) having counsel for the EEOC detail the terms of the consent decree, which the EEOC stated on the record as follows:

1. The consent decree shall remain in effect for three years;

2. The consent decree shall cover Defendants' California locations and Human Resources personnel at Defendants' headquarters in Austin, Texas;

3. Defendants shall provide a live and interactive ADA training to all salaried managers at Defendants' California locations and to all Human Resources employees at Defendants' corporate office in Austin, Texas;

4. Defendants shall provide an ADA training to all hourly employees at Defendants' California locations and such training must provide a mechanism by which employees may direct specific questions related to the subjects covered in the training;

5. Defendants shall provide an annual report to the EEOC that details the ADA trainings conducted in the prior 12-month period and any complaints of disability discrimination or failure to accommodate that have been received in their California locations;

6. Defendants shall review their disability-related policies to ensure that the policies

5

1   comply with the ADA and include information on how to request reasonable accommodations;

2       7.    Defendants shall distribute their disability-related policies on their website, which
3   shall include to contact name and email address of a designated individual within Defendants'
4   organization who can answer any follow up questions related to the policies.  In addition,
5   Defendants must ensure that hard copies of the policies are made available in the common areas
6   at their California facilities and in the Human Resources Department at Defendants' corporate
7   office in Austin, Texas;

8       8.    Defendants may include a non-admission of liability provision; and

9       9.    Defendants shall post a copy of the consent decree in the common areas at their
10  California facilities and in the Human Resources department at Defendants' corporate office in
11  Austin, Texas.

12  (MSC Transcript at 2:9-3:6:7).

13  After these terms were read into the record, counsel affirmed that they understood and
14  agreed to the terms as set forth above as follows:

15  **The Court**: Okay. All right. Are there any other terms from—that need discussion? Any
16  other terms?

17  **Mr. Torrano**: No, Your Honor.

18  **The Court**: Okay. All right. Mr. Totten, you've sat through the settlement discussions
19  what we've had today, and you've heard the terms as they've been put on the record here on
20  behalf of the EEOC and your company. Do you agree to the terms?

21  **Mr. Totten**: Yes, your honor.

22  …

23  **The Court**:  All right.  And on behalf of the EEOC, Ms. Vuong,…you've stated the
24  terms, and you agree to the terms, right?

25  **Ms. Vuong**: Yes,

26  **The Court**: And you have authority to bind the EEOC as to the settlement amount and
27  the consent decree, is that correct?

28  **Ms. Vuong**: Yes.

(MSC Transcript at 6:5-7:5).

At the close of the settlement conference, the Court and the parties confirmed that there were "issues that needed to be ironed out," and the Court retained jurisdiction over the matter and set a status conference to discuss any remaining issues.

**2.      Enforceability of the Settlement Agreement**

Defendants ask the Court to enforce the settlement agreement as set forth on the record. The EEOC, on the other hand, contends that the settlement agreement on the record was not a complete agreement and that the parties anticipated that they would be bound only after they prepared and executed a formal consent decree containing all material terms of the agreement.

The Court interprets a settlement agreement in accordance with the same principles applied to any other contract. *United Commercial,* 962 F.2d at 856. An enforceable contract requires that the parties have a meeting of the minds as to all material terms. "If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred. If no contract formation has occurred, there is no settlement agreement to enforce. *Weddington Productions,* 60 Cal.App.4th at 809. In determining whether a contract represents a meeting of the minds, its "terms . . . are determined by objective rather than by subjective criteria. The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe." *Winograd v. American Broadcasting Co.*, 68 Cal.App.4th 624, 632 (1998). The Court must focus on the intent manifested in the agreement and by surrounding conduct, not the subjective beliefs of the parties. *United Commercial*, 962 F.2d at 856.

**A.      Objective Manifestations**

The EEOC contends that the settlement agreement is unenforceable because the actions of both parties prior to and after the settlement agreement demonstrate that there was no meeting of the minds on several material terms of the settlement agreement. According to the EEOC, in the initial meetings before the settlement conference, the parties discussed and agreed upon certain terms of the consent decree. During the settlement conference, Defendants failed to object to the previously agreed on provisions, but after the settlement conference, Defendants raised objections

7

1 to certain provisions.  According to the EEOC, this demonstrates there was no mutual consent or meeting of the minds as to these material terms, and consequently, there was no contract formation at the conclusion of the settlement conference.  (Doc. 39 at 8).

This case is analogous to the facts of *Doi v. Halekulani*, 276 F.3d 1131 (9th Cir. 2002), where the Ninth Circuit affirmed a district court's order enforcing a parties' settlement agreement entered into on the record in open court.  In *Doi*, the district court was involved in facilitating settlement discussions, which resulted in settlement. *Id.* at 1134. Counsel for both parties, as well as the plaintiff herself, came into open court to announce that the parties had agreed to settle the case and placed the terms of the settlement on the record. *Id.* Defense counsel subsequently prepared a written settlement agreement, which Plaintiff refused to sign. *Id.* at 1135-36.  Plaintiff argued the agreement could not be enforced because, in fact, she did not enter into any binding settlement agreement. Alternatively, plaintiff argued that various terms of the written settlement agreement were not among those terms agreed to in open court.  Ultimately, the court granted Defendant's motion to enforce the proposed written settlement agreement. *Id.* at 1136.  The court found that the oral settlement agreement was a binding settlement. The court rejected Plaintiff's claim that the court erred by enforcing the written settlement agreement because the terms were consistent with the terms in the oral agreement placed on the record. *Id.* at 1139-40.

In this case, the Court finds that the objective manifestations of the EEOC demonstrated that it intended to settle the case fully and to place the material terms of settlement on the record. As in *Doi*, 276 F.3d 1131, the Court spent several hours facilitating settlement negotiations before the parties agreed to the settlement of this case. Both parties, with the assistance of counsel and Judge McAuliffe, had substantial time to understand and negotiate the terms of the agreement during the settlement conference.  Indeed, as described above, the transcript of the March 28, 2013 settlement conference demonstrates that the parties placed on the record the payment and consent decree terms and understood and agreed to all of the material terms of the settlement. The EEOC negotiated for a compensatory amount for Ms. Cece and for a consent decree with certain provisions.  Consistent with the negotiations, the settlement consisted of a payment amount and specific provisions for a consent decree. The parties and counsel then convened in open court and

8

placed the material terms of the settlement on the record. The EEOC and Defendants' counsel, along with Defendants' client representative, agreed and understood that they had a binding settlement agreement that day and that a written consent decree would follow. The record therefore reflects a complete agreement between the parties and their intent to be bound by its terms as discussed at the hearing. Thus, the facts indicate that the parties intended to settle and to reach a complete agreement as to the amount and terms of the consent decree.

The fact that the parties agreed that they would subsequently "iron out" the particular specifics of the consent decree after the settlement conference does not render the entire settlement agreement unenforceable. The parties were clear as to the goals of settlement (i.e. monetary settlement and consent decree) and the means of achieving those goals: ($40,000 payment to the real party in interest and a three-year consent decree imposing specific obligations on Defendants to review and revise their ADA policies, provide ADA training to specific managers and employees, and monitor ADA related complaints, etc.). Thus, the key terms of the consent decree were negotiated and agreed upon on the record. Therefore, the parties' meeting of the minds on these terms was sufficient to form a binding and enforceable agreement. Moreover, the parties represented to the Court and to each other that they had reached a full settlement. MSC Transcript at 1:16-19. These objective manifestations of consent bound the parties, even though they still needed to draft a formal mutually agreeable consent decree and obtain dismissal of the action. The objective manifestations demonstrate that there was intent to place all terms on the record and be bound to the settlement agreement on the record.

**B.     Subjective Manifestations**

The EEOC's main point is that prior to the formal settlement conference, the EEOC provided Defendants with a proposed consent decree containing provisions relating to successor liability and the designation of duties of the ADA coordinator. (Doc. 41 at 7-8). The EEOC argues, therefore, Defendants knew of the EEOC's intent as it relates to these two provisions. When Defendants failed to raise any objections to those provisions during the settlement conference, the EEOC reasoned that that those terms were agreed to.

While the EEOC was operating under a subjective belief that Defendants' silence implied

consent to the successor liability and ADA coordinator provisions, the Court must focus on the intent manifested in the agreement and by surrounding conduct, not the subjective beliefs of the parties. *United Commercial*, 962 F.2d at 856 (intent of party is irrelevant if it is unexpressed). The parties engaged in extensive negotiations during the settlement conference regarding the terms of the consent decree. Many terms were negotiated, rejected, and ultimately accepted in the final settlement. Therefore, any subjective belief by the EEOC does not controvert the objective manifestation of their assent to the express terms of the settlement placed on the record.

The EEOC also complains that material terms including provisions for successor liability and the designation and duties of the ADA coordinator are material terms that were not placed on the record. In the EEOC's purview, these terms are so essential to their primary public interest function and that their absence from the in-court settlement agreement demonstrates the parties' lack of intent to be bound by the terms placed on the record.

This argument is unpersuasive. The Court rejects the EEOC's argument that the outstanding terms of settlement were material to the settlement agreement. If these provisions were crucial and material to its end bargain, the EEOC would have placed these terms on the record. At the settlement conference, the material terms of the settlement agreement were identified. Indeed, the existence of the ADA coordinator was the subject of intense negotiations prior to the settlement conference. Additionally, during the settlement conference, the Court recalls that the Defendants explained that their business model included purchasing multiple hospitals and that was communicated to the EEOC. Defendants expressed their concern that certain successor liability provisions could unfairly bind future hospitals to the consent decree. *See Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 489-490 (7th Cir. 2002) (magistrate judge's recollection of terms of oral settlement sufficient for enforcement).

At the settlement conference, terms were negotiated and accepted, and terms were negotiated and rejected. The EEOC itself then carefully detailed the negotiated material terms on the record. The evidence fails to indicate that there were any unresolved material terms to the settlement agreement. After accepting the material terms, the parties both agreed that the remaining details would be "ironed out." California law permits parties to bind themselves to a

contract, even when they anticipate that some material aspects of the deal will be papered later. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011). California law does not require express delegation regarding potential missing terms of a contract. *Id.* "When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement." *Blix Street Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 49 (2010). The EEOC now believes the terms of the in-court settlement are not as comprehensive as they would like, but after-settlement revisions cannot alter the terms agreed to at the settlement conference. A dispute over additional nonmaterial terms does not alter the fact that an agreement was reached on the material terms at the March 28, 2013 settlement conference.

The Court finds that the settlement agreement placed on the record on March 28, 2013 sets forth the material terms of the settlement, and the parties manifested their intent to be bound by those terms. Therefore, the Court RECOMMENDS that the settlement agreement should be enforced as set forth on the record.

**3.     Disputed Terms of the Settlement Agreement**

Having found that the parties entered into an enforceable settlement agreement, the Court instructs the parties to meet and confer on a final consent decree with the following guidance on the four areas in dispute.

**A.     Successor Liability**

In its proposed consent decree, the EEOC includes a provision stating that its consent decree shall be binding and enforceable against Defendants and their parents, subsidiaries, officers, directors, agents, successors, and assigns. According to the EEOC, successor liability clauses are standard to all EEOC consent decrees as it prevents a Defendant from selling their company to avoid the relief agreed to in the consent decree. Defendants object to the inclusion of provisions regarding successor liability in the consent decree as they were not agreed to on the record. Further, at the settlement conference, Defendants voiced their opinion that binding successor businesses to the consent decree was a position it was unwilling to take. Defendants are in the business of buying hospitals and forcing future acquired hospitals to comply with the

11

consent decree would create an undue burden.

While the Court agrees that an expansive provision for successor liability was not placed on the record, a narrow successor liability provision was within the contemplation and understanding of the parties. Therefore, the parties are instructed to draft successor liability provision which addresses the concerns raised by Defendants.

### B. ADA Coordinator

According to the EEOC, one of the most important parts of its proposed consent decree is the appointment of an ADA coordinator. The EEOC maintains that it did not place the agreement to the ADA coordinator on the record because it was operating under the belief that the appointment of the coordinator was finalized during the informal settlement negotiations leading up to the settlement conference and was therefore not in dispute at the time of the settlement conference. In their motion, Defendants object to the EEOC's inclusion of a formal ADA coordinator as a part of the settlement agreement as it was not placed on the record. In their reply papers, Defendants allege that they never agreed to the appointment of a formal ADA coordinator. (Doc. 41 at 3). However at the hearing, Defendants admitted that while they did agree to an ADA coordinator prior to the settlement conference, they never agreed to the extent of the proposed coordinator's duties and the level of oversight imposed by the EEOC in the proposed consent decree.

Defendants have conceded that they are agreeable to appointing one person within their company to act as an ADA coordinator provided that Defendants maintain control over the selection process. During the hearing on the motion to enforce, Defendants agreed to appoint an internal person to oversee compliance issues. In line with that concession, the Court will not further consider the EEOC-stated specific duties of the ADA coordinator, as specific tasks were not agreed to on the record or in any prior settlement negotiations. Nonetheless, Defendants will be required to appoint a qualified Human Resources person to oversee compliance with the consent decree. The candid statements by the parties during oral argument reveal that there appears to be some effort between the parties to reach a final agreement on the ADA coordinator. The parties should draft the requirements of the ADA coordinator that are considerate of the

needs of each; with the understanding that the ADA coordinator should have sufficient human resources qualifications and experience in ADA administration.

### C. Non-Admission Clause

On the record, the parties agreed that Defendants would be entitled to include one non-admission clause establishing that compliance with the EEOC's consent decree is not an admission of any wrongdoing. The Court therefore rejects Defendants' attempt to add a second non-admission clause to the EEOC's proposed consent decree. Defendants' entire motion is predicated on the idea that the Court should enforce the settlement agreement exactly as it was stated on the record. The insertion of a second non-admission clause stating that the consent decree does not constitute an admission of wrongdoing was not placed on the record or contemplated by the parties at the settlement conference and will not be enforced as a part of the settlement agreement.

### D. ADA Policies and Procedures

Finally, on the record, Defendants agreed that they would review their disability related policies to ensure that such policies comply with the ADA. Specifically, at the settlement conference, the parties agreed to "a revision or a statement from defendants that their policies for disability discrimination complies with the requirement of the ADA," and that the parties would "iron that out specifically in the consent decree…which provisions those are." (MSC Transcript at 4:7-4:13). In its proposed consent decree, the EEOC included a provision containing the specific features that should be included in Defendants' revised policies and procedures to ensure that Defendants' comply with the ADA. Defendants object to the EEOC's proposed policies and procedures provision and instead argue that a one-line statement that they have complied with the ADA is sufficient to comply with their obligation under the settlement agreement.

The Court is concerned with the narrow interpretation Defendants have taken with the review of their procedures. A mere statement declaring that Defendants have revised and complied with the ADA violates both the letter and the spirit of the agreement stated on the record.

## 4. Meet and Confer

Based on the above findings, the parties shall promptly confer and, within 10 days of the adoption of these Findings and Recommendations, shall submit a proposed consent decree for entry by the Court that incorporates the terms of their in-court settlement agreement and these findings and recommendations. If there are any disagreements about the wording of the agreement, each party should set forth his position in a letter not exceeding five pages in length, and after due consideration, the Court will enter a consent decree that is consistent with the terms and spirit of the oral agreement as stated on the record.

## CONCLUSION

Accordingly, for the reasons stated above, **IT IS RECOMMENDED** that Defendants' motion to enforce the settlement agreement should be **GRANTED**. These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 28, 2013**          /s/ Barbara A. McAuliffe
                                       UNITED STATES MAGISTRATE JUDGE