UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOSPITAL HOUSEKEEPING SYSTEMS OF HOUSTON, INC., *et al.,*<br><br>　　　　Defendants.<br>_____/ | Case No. 1:11-cv-1658-LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS RESOLVING DISPUTED CONSENT DECREE LANGUAGE** |

Pending before the Court is the parties' final disputed language in their proposed consent decrees.

**BRIEF BACKGROUND**

This Court conducted a formal settlement conference on March 28, 2013 where a settlement was reached. At the settlement conference, Plaintiff the United States Equal Employment Opportunity Commission ("EEOC") and Defendants Hospital Housekeeping Systems, Inc.'s and Hospital Housekeeping Systems, LLC's (collectively "Defendants" or "HHS") entered into an oral settlement agreement which was placed on the record in open court.

Thereafter, the parties were unable to fully memorialize the written terms of their oral settlement agreement into a Consent Decree. Disagreements arose over a few provisions of the decree. The Court made several attempts to assist the parties in resolving their differences. Plaintiff ultimately

took the position that there was no binding settlement agreement and requested that the case proceed to trial. Defendants disagreed and filed a Motion to Enforce the Settlement Agreement as stated on the record. In Findings and Recommendations dated October 29, 2013, the Court concluded that an oral settlement agreement had been reached and was enforceable. The Court stated that a written consent decree should reflect the explicit and intended understanding of the parties in their oral settlement agreement. The Findings and Recommendations were adopted by the District Court on November 21, 2013. (Doc. 51.) The Court directed the parties to meet and confer to finalize a consent decree, and if unable to agree to final terms, the parties were directed to submit their proposed consent decrees embodying their disagreement for consideration and entry by the Court. *See United States EEOC v. Hosp. Housekeeping Sys. of Houston, Inc.,* 2013 U.S. Dist. LEXIS 155154, *26 (E.D. Cal. Oct. 28, 2013). Despite several attempts to finalize mutually agreeable consent decree language, the parties are unable to agree to the final terms. Thereafter, the parties submitted their proposed consent decrees. Defendant submitted a proposed consent decree, and plaintiff submitted redlined edits of defendant's proposed consent decree. (Doc. 55-3.)

Having reviewed the parties' proposed consent decrees, and especially the redlined edits of defendant's proposed consent decree, the Court resolves the parties' disputed consent decree language as follows. In addition, by separate order, the Court issues what the Court terms a "Judicial Decree and Judgment," which reflects all of the consent decree language to be entered by the Court as a judgment.[1]

## LEGAL STANDARD

Since this Court already has ruled that the parties entered into material terms of a settlement agreement, the Court has the power to enter a complete settlement judgment. *See Doi v. Haekulani Corp,* 276 F.3d 1131, 1139-40 (9th Cir. 2002). "[I]t is . . . well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it; the actual merits of the controversy become inconsequential." *See Gonzalez v.*

---

[1] To clarify the terminology used, this order refers to the documents submitted by the parties as their proposed "consent decrees." Since the parties, in fact, do not agree and therefore, do not have a "consent decree," the judgment which will issue will be termed a "Judicial Decree and Judgment."

*Compass Vision, Inc.*, 2013 U.S. Dist. LEXIS 169013, 4-5 (S.D. Cal. Nov. 25, 2013) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)); *see also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (affirming summary enforcement of settlement agreement by bankruptcy court where there was no dispute about the formation or consummation of the agreement). "The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." *Dacanay*, 573 F.2d at 1078 (citation omitted). To be enforced, a settlement agreement must be complete and both parties must have agreed to the terms of the settlement. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994).

Other courts have upheld a court's authority to supply the detailed terms and wording of a judgment. Although not binding, the Court finds the reasoning of the Second Circuit case law on settlement judgments to be persuasive and analogous to the Judicial Decree recommended here. In *Janus Films, Inc. v. Miller*, 801 F.2d 578 (2d Cir. 1986), the Second Circuit held that where an agreement to settle is made in open court, a judge may enter a "settlement judgment." *Id.* at 582. In entering such a judgment, "the judge is obliged to determine the detailed terms of the relief and the wording of the judgment." *Id.*; *accord Consolidated Edison Co. of N.Y. v. Fyn Paint & Lacquer Co.*, 2008 U.S. Dist. LEXIS 25097, 2008 WL 852067 (E.D.N.Y. Mar. 28, 2008) ("Where parties agree to a settlement on the record, but are unable to agree upon the final terms to implement their agreement, a district court has the authority to issue a 'settlement judgment' to effectuate the settlement agreement.") (citations omitted); *see also Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 443, 448 (2d Cir. 2005) (affirming decision of district court to "enter[] judgment in accordance with the terms of [a] Settlement Agreement"). In appropriate circumstances, a court "retain[s] authority to clarify subsequently the settlement and to impose clarifying terms." *Manning v. N.Y.U.*, 299 F.3d 156, 163 (2d Cir. 2002). If necessary to enforce the terms of a settlement, a court also has authority to require a party to undertake acts not specifically contemplated as part of the settlement itself. *See*

3

*generally Huertas v. East River Housing Corp.*, 992 F.2d 1263 (2d Cir. 1993); *Meetings & Expositions*, 490 F.2d at 717 (2d Cir. 1974).

With these legal principles in mind, the Court resolves the terms of the parties' proposed consent decrees.

## DISCUSSION

### 1. Parties' Proposed Consent Decrees

To afford the parties an opportunity to be heard as to the precise content and wording of the final judgment, the Court instructed the parties to submit written proposals for the Court's consideration. *EEOC*, 2013 U.S. Dist. LEXIS 155154, *26. Defendants provided a copy of their final proposed consent decree, and the EEOC provided a redlined version of Defendants' proposed consent decree indicating the EEOC's amendments. These proposed consent decrees served as a basis for the Court to "determine the detailed terms of relief and the wording of the judgment." *Id.* at 582; *see Salerno v. City University of New York*, 2005 WL 578944, at *1-2 (S.D.N.Y. Mar. 10, 2005) (entering a settlement judgment comprised of terms determined by the court upon consideration of proposed draft agreements submitted by the parties).

In large part, the parties' proposed consent decrees agree. The language of a few provisions remains in dispute. Listed below is a summary of the provisions to which the parties agree and a resolution of the remaining disputed provisions.

### 2. Summary of Agreed Provisions

The parties mutually agreed to a majority of provisions in their proposed consent decrees. The agreed provisions are summarized briefly as follows.

#### A. Release of Claims

In section II, "Release of Claims," the parties' consent decree provides that entry of the consent decree resolves all claims and issues raised by the EEOC against Defendants in this action. The parties stipulate that the decree does not preclude any party from bringing suit to enforce the decree nor does the decree limit the EEOC's ability to litigate other charges that may arise against Defendants. (Doc. 55-3, Redlined Proposed Consent Decree, Exhibit A at 3).

///

///

///

**B.     Jurisdiction**

In section III, "Jurisdiction," the parties' consent decree provides that the Court has jurisdiction over the parties and subject matter of this action. Further, the Court retains jurisdiction during the duration of the decree.

**C.     Effective Date and Duration of Decree**

Section IV, "Effective Date and Duration of Decree," provides that the parties' consent decree is immediately effective on the date the decree is entered by the Court ("Effective Date"). Upon entry, the consent decree will remain in effect for three years.

**D.     Modification and Severability**

Section V, "Modification and Severability" provides that the parties' consent decree is the complete agreement and by mutual agreement of the parties, the consent decree may be modified in order to fulfill the intended provisions. Otherwise, the parties may not modify or amend any provision unless agreed to in writing by an authorized representative of each party.

**E.     Compliance and Resolution**

Section VI, "Compliance and Resolution" provides that Plaintiff may bring an action before this Court if Defendants fail to comply with the consent decree. Once a failure to comply has been identified, Defendant will have ninety (90) days to attempt to resolve or cure the breach. If the parties cannot resolve the matter, Plaintiff may seek appropriate relief from the Court.

**F.     Monetary Relief**

Section VII, "Monetary Relief" provides that in settlement of this lawsuit, Defendants will pay real party in interest, Angelica Jaime-CeCe, a gross sum of $40,000 within ten days of the effective date of the consent decree. Ms. Jaime-CeCe is then solely responsible for any subsequent tax liabilities with respect to the settlement amount.

**G.     Miscellaneous Provisions**

Section X, "Miscellaneous Provisions" provides that Defendants will supply its successors in interest with a copy of the consent decree within a reasonable time frame prior to any acquisition of

Defendants' business. Defendants will also inform Plaintiff of any material changes to Defendants' corporate structure.

### H. Costs and Monetary Relief

The parties agree to bear their own costs of suit and attorneys' fees.

As the parties mutually agree to the previously listed provisions, the final Judicial Decree and Judgment will reflect the parties' agreement on those issues.

### 3. Resolution of Disputed Provisions

While the parties have been able to agree to most of the provisions, the parties have been unable to reach a final agreement on several issues. Using the parties' proposed consent decrees, the redlined version, and the oral settlement agreement on the record, the Court resolves the parties' disputes and explains its reasons in resolving the final terms for inclusion in the Judicial Decree as follows.

### A. Purpose and Scope

Section I of the EEOC's proposed judgment is titled "Purpose and Scope." (Doc. 55-3, Redlined Proposed Consent Decree, Exhibit A at 2). Section IA of the Purpose and Scope section explains that the Decree is enforceable and binding against Defendants. Section IB of the Purpose and Scope explains purported reasons that the parties entered into the Decree to: (1) avoid costly litigation; (2) affirm Defendants' compliance with federal law; (3) affirm that Defendants maintain a discrimination free work environment; and (4) confirm that Defendants adequately train its employees on disability discrimination.

Defendants object to the inclusion of the entire Purpose and Scope section of the EEOC's proposed consent decree primarily because such a provision was not detailed on the record. According to Defendants, because this provision was never discussed, it should not be imposed.

The Court disagrees that section IA, in its entirety, should be omitted from the parties' final consent decree. The language stated in section IA is generic boilerplate language, simply memorializing what is true about most consent decrees: that they are binding and enforceable against Defendants. While the parties here did not explicitly discuss enforceability on the record, this is a provision routinely and customarily found in consent decrees and was fairly implied by the nature of

the agreement. *Janus Films*, 801 F.2d at 582. Any argument by Defendants that they never intended for the agreement to be binding and enforceable against them would illogical and directly contrary to settlement agreement entered on the record. Further, the innocuous nature of the section IA of the Purpose and Scope persuades the Court to overrule Defendants' challenge to this section. For these reasons, the Judicial Decree should incorporate the EEOC's proposed language in IA.

The Court reaches a different conclusion with Section IB. Section IB states the purported reasons the parties have entered into the agreement. Defendants argue that Section IB is superfluous and casts Defendants in an unfairly negative light. In finalizing the terms of the Decree, the Court must keep an eye towards the agreement placed on the record. The Court cannot say with confidence that Defendants agreed to any language casting Defendants current discrimination policies in a negative light. Further, the EEOC has been aware of Defendants' objection to this language since at least August 23, 2013 when Defendants filed their motion to enforce the settlement agreement. Defendants' proposed consent decree attached as an exhibit expressly omits the language found in IB, yet this is the first time Plaintiff has challenged the omission of this language. Therefore, the final Judicial Decree should not include the scope of the agreement language found in section IB.

### B. "VIII. General Injunctive Relief"

The EEOC proposes section VIII, "General Injunctive Relief." Defendants oppose the inclusion of the EEOC's proposed "General Injunctive Relief" section in its entirety. The General Injunctive Relief section drafted by the EEOC states the Defendants are barred from discriminating against their employees or retaliating against employees who oppose discrimination.

The Court fails to see why this language should be omitted from the parties' final consent decree. It is within the intent and spirit of the oral settlement agreement that the decree would enjoin defendants from discriminating or retaliating against their employees in the future. The language proposed by Plaintiff in the "General Injunctive Relief" section essentially memorializes the reason for the settlement agreement and the related decree. The Court therefore declines to strike this customary language as it embodies the general purpose of the parties' agreement.

Further, Defendants' counsel never expressed any disagreement or objection to this section. In fact, Defendants' April consent decree proposed immediately after the settlement conference,

contained a section entitled "General Injunctive Relief," largely similar to the proposed language in the EEOC's instant proposed consent decree. (*See* Docket 39-3, Defendants' Proposed Consent Decree, at p. 6-7). The parties have exchanged several proposed consent decrees containing the "General Injunctive Relief" language without bringing their objections to this section to the Court's attention. The Court is unpersuaded by Defendants' arguments unilaterally to omit this provision now. Accordingly, the Court should include the EEOC's proposed "General Injunctive Relief" section with non-material alterations in the Judicial Decree.

### C. "IX. Injunctive Relief"

Section IX is entitled "Injunctive Relief" which contains multiple sub-parts, three of which have disputed language: "A. ADA Coordinator," "B. Policies and Procedures," and "D. Training." The Court addresses each subpart below.

#### 1. "A. ADA Coordinator"

In the in-court settlement agreement read into the record, the parties did not agree to the appointment of an ADA coordinator. While the issue was discussed at the settlement conference, there is no dispute that an agreement to an ADA coordinator is absent from the record. Despite this, in an effort to further negotiations after the settlement conference, Defendants have agreed to the inclusion of an ADA coordinator as a term of the final consent decree. However, Defendants are unwilling to require that the ADA coordinator have "human resources qualifications and experience" as recommended by the Court in its Order enforcing settlement. Instead, Defendants agree to appoint "one person within the Company who will possess appropriate qualifications and experience for the responsibilities he/she is expected to employ" to ensure that the consent decree is followed. Defendants are adamant that because they did not agree to an appointment of an ADA coordinator on the record that it would be fundamentally unfair to impose extensive qualifications on employing that position.

The EEOC disagrees with Defendants' position, arguing that the EEOC must have some way to verify that the appointed ADA coordinator is qualified with the necessary experience. To that end, the EEOC proposes a provision that would allow Defendants to appoint an individual as an ADA coordinator and provide that individual's qualifications to the Court.

The Court disagrees with the EEOC's position and adopts Defendants' language with the respect to the appointment of the ADA coordinator. The Court previously warned the EEOC that the "Court will not further consider the EEOC-stated specific duties of the ADA coordinator, as specific tasks were not agreed to on the record or in any prior settlement agreement." *See United States EEOC v. Hosp. Housekeeping Sys. of Houston, Inc.*, No. 11-cv-1658, 2013 U.S. Dist. LEXIS 155154, at *23. *(E.D. Cal. Oct. 28, 2013).* Defendants have alleged that additional obligations would significantly affect Defendants' hiring decisions and unjustifiably interfere with Defendants' ability to conduct business. These objections are similar to the concerns raised by Defendants at the settlement conference. As Defendants did not agree to specific duties of the ADA coordinator on the record or at any time during post settlement negotiations, the Court will not impose further obligations on that position. Accordingly, Defendants' language with respect to the ADA coordinator should be incorporated in the final Judicial Decree.

### 2. "B. Policies and Procedures"

In the oral agreement, Defendants agreed they would review their disability related policies to ensure compliance with the ADA and include information on how to request reasonable accommodations under the ADA. In the settlement enforcement order, the Court recognized that the intended understanding of that agreement was that some changes would result from Defendants' review of their policies. The EEOC has proposed the inclusion of provisions stating: (1) how an employee may complain about disability discrimination; (2) a statement that Defendants are required to engage in a good faith interactive process as required by the ADA; and (3) language explaining an employee's rights under the ADA. The EEOC's proposed provisions reflect the letter and spirit of those terms stated on the record and therefore they should be entered into the final Judicial Decree.

### 3. "D. Training"

Defendants object to the EEOC's inclusion of provisions related to training. In the oral agreement, Defendants agreed to provide "ADA training" including implementing a "mechanism where employees may direct specific questions related to the subjects covered in the training." The EEOC proposes that the training section include language explaining that the training will cover employee's rights under the ADA and related statutes, the law on reasonable accommodations, and

Defendants' obligation to engage in the interactive process.  The EEOC's proposed provisions reflect the letter and spirit of those terms stated on the record, and therefore, they should be entered into the final consent decree. Accordingly, the Court's Judicial Decree should include the language found in the EEOC's proposed Training section.

### D. Reporting

Section IX includes a provision on "Reporting."  Defendants agreed to provide an "annual report to the EEOC that details the ADA trainings conducted in the prior 12-month period and any complaints of disability discrimination or failure to accommodate."  However, the EEOC now attempts to include a provision requiring Defendants to submit a training report 180 days after the Effective Date and further verification of training in addition to the agreed upon annual reporting requirements.  The EEOC's proposed language directly contradicts the explicit agreement on the record.  Therefore, any language suggested by the EEOC that requires Defendants to submit training reports more than once a year should not be incorporated into the final Judicial Decree. Accordingly, the Court should include in the Judicial Decree the language found in the Defendants' proposed Reporting section.

### 4. Final Terms of the Judicial Decree and Judgment

Finally, having considered the written terms proposed by each party, as well as the terms of the oral settlement agreement on the record, the Court will issue a separate document incorporating the resolution of the parties' proposed consent decrees into the final "Judicial Decree and Judgment." The Court will recommend that the parties be bound by the terms set forth in the Judicial Decree and Judgment as a full and final settlement judgment.

### CONCLUSION

Accordingly, **IT IS RECOMMENDED** that the Court's Judicial Decree and Judgment reflect the resolutions indicated above.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to

these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 21, 2014**              /s/ Barbara A. McAuliffe
                                         UNITED STATES MAGISTRATE JUDGE